UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>RICARDO GARCIA-SEGURA,<br><br>        Defendant. | No. 14 C 9242<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Defendant Ricardo Garcia-Segura filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Defendant argues that he received constitutionally ineffective assistance of counsel at sentencing because his attorney failed to argue and present evidence that Defendant was purportedly eligible for the benefits of the fast-track program, and therefore should have gotten a lower sentence to avoid a sentencing disparity. For the following reasons, Defendant's motion is denied.

## BACKGROUND

Defendant Ricardo Garcia-Segura was charged by criminal complaint on July 16, 2010, with illegal reentry, in violation of 8 U.S.C. § 1326(a). *See United States v. Ricardo Garcia-Segura*, 10 CR 603 (N.D. Ill.). A federal grand jury subsequently returned a single-count indictment charging Defendant with the same offense on July 29, 2010. Approximately 18 months later, on January 27, 2012, Defendant pleaded guilty to the indictment pursuant to a blind plea and written plea declaration.

At the time of his initial appearance, an attorney was appointed to represent Defendant. As described below, this same attorney continued to represent Defendant from the time of his

initial appearance through his petition for a writ of certiorari.

*Defendant's Plea Declaration*

As a part of his blind plea and plea declaration, Defendant acknowledged that he is a native and citizen of Mexico without any claim to United States citizenship or legal residency. He further acknowledged that he had been removed from the United States on two previous occasions – first on September 26, 2003, and again on December 10, 2007, after he was convicted of unlawful delivery of a controlled substance and sentenced to 9 years' imprisonment. After he was removed for the second time on December 10, 2007, Defendant admitted that he returned to the United States days later on or about December 13, 2007.

In addition, Defendant admitted in the plea declaration that he was present in the United States on January 5, 2009, when Immigration and Customs Enforcement officials encountered him while he was in custody in Cook County jail pending state charges of possession of a controlled substance and unlawful possession of a weapon by a felon.

As to the sentencing consequences that he faced, Defendant's plea declaration was very specific. Defendant acknowledged that the maximum sentence was 20 years, and that the Court could sentence him up to that maximum term of imprisonment. In fashioning his sentence, Defendant acknowledged that the Court would be guided by the Sentencing Guidelines. Defendant confirmed that his plea was entirely voluntary. Defendant further stated that he understood that, as a result of his plea, he would again be deported and removed from the United States. Defendant's plea did not include any waiver of appellate or collateral rights.

*The Sentencing Guideline Range*

Following Defendant's plea of guilty, the Probation Office completed a Presentence Investigation Report (dated March 27, 2012). The Probation Office concluded that the base

2

offense level was 8 pursuant to § 2L1.2, and that the offense level was increased by 16 levels because Defendant previously was deported following a conviction for a felony drug trafficking offense – Defendant's 2004 conviction for unlawful delivery of a controlled substance. Taking into account a reduction for acceptance of responsibility, Defendant's total offense level was 21.

The Probation Office further concluded that Defendant had 16 criminal history points, which resulted in the maximum criminal history category of VI. The PSR detailed Defendant's extensive history of committing crimes while living illegally in the United States including:

- 9/24/2001: convicted of possession of a controlled substance and sentenced to 5 years' imprisonment;

- 3/28/2002: convicted of possession of a controlled substance and sentenced to 2 years' imprisonment;

- 4/20/2004: convicted of unlawful delivery of a controlled substance and sentenced to 9 years' imprisonment;

- 10/25/2008: convicted of possession of a controlled substance and sentenced to one year's imprisonment; and

- 1/4/2009: convicted of unlawful possession of a firearm by a felon and sentenced to 3 years' imprisonment.

Based upon an offense level of 21 and criminal history category VI, the resulting Guideline range was 77 to 96 months' imprisonment. Both the government and Defendant agreed with the Probation Office's calculation of the Guidelines and criminal history category.

*Defendant's Sentencing Memorandum*

On May 23, 2012, counsel for Defendant filed a sentencing memorandum on Defendant's behalf. In it, counsel first acknowledged that the Guideline range was 77 to 96 months' imprisonment, based upon an offense level of 21 and Defendant's criminal history category of VI. In light of the 3553(a) factors, however, counsel asked the Court to impose a

below-Guidelines sentence. Defendant's primary mitigation argument was that a 19-month reduction in the sentence was warranted to account for the time that Defendant spent in state custody after he was discovered by immigration officials. Defendant argued that the purported 19-month delay between his encounter with immigration officials and the issuance of the federal complaint deprived him of the opportunity to serve his federal sentence concurrently with his state sentence. Additionally, counsel argued that a below-Guidelines sentence was warranted because:

> "[T]he significant delay in charging Mr. Garcia-Segura creates 'unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct' under 3553(a)(6) by requiring him to serve a longer sentence than other illegal reentry defendants against whom charges were brought in a more timely manner."

Although counsel did not use the term "fast-track," he argued for a below-Guideline sentence based upon alleged sentencing disparities.

*Sentencing Hearing*

The Court conducted Defendant's sentencing hearing on June 11, 2012. At sentencing, defense counsel argued for a reduced sentence primarily based upon (1) Defendant's alleged lost opportunity to serve 19 months of his federal sentence concurrent with his state sentence for felon in possession of a firearm; and (2) the disparity between his sentence and the sentence to which he allegedly would have been entitled as part of a fast-track program. With regard to the fast-track argument, counsel stated:

> "And one other point, Judge, and I did bring it up in my sentencing memorandum, and frankly it's one of the things that kicked around and discussed in a recent seminar . . . I want to bring up an argument, the fasttrack argument, Judge, disparity. Mr. Garcia-Segura at the onset of this case, the notion of a fast-track disposition was not going to happen because I believe the government's position was that there are serious drug offenses in

> Mr. Garcia-Segura's background and did not warrant an offer of the fasttrack by the government.
>
> Your Honor, I think that in order to avoid a disparity sentence, I think that Mr. Garcia-Segura is entitled to some consideration under that particular statute. Right now he is at – would be at a level 21, which is the guideline calculation. I think we want 4 levels down to a level . . . . I think, 17, which would be 51 to 63 months. If you took the low end of 51 months, minus 19 months for time he stayed in state custody, 51 to 32 months. We're asking the Court to please consider a sentence of 32 months in Mr. Garcia-Segura's case. I think he should get credit for 19 months. I think to avoid disparity, we should look at the fast-track application. And ultimately, Judge, he's going to be deported. … I ask the Court to please take into consideration those factors when it issues a sentence for this particular defendant."

In response to Defendant's fast-track argument, the government argued that, as an aggravated felon, Defendant was not eligible for a fast-track program, and that, in light of the Defendant's repeated criminal conduct, a within-Guideline sentence was warranted.

After listening to arguments from both parties and reviewing Defendant's statement, the district court responded to defense counsel's arguments as follows:

> "I think that almost every argument you make, except the fast track which is a different problem, would have some significant force if this wasn't going to be the third time he's sent back. If it were the second time, it would be a little different . . . ."

The district court also stated that it attached significant weight to the fact that Defendant had committed numerous criminal offenses while illegally present in the United States. The district court contrasted Defendant with individuals who are in the country illegally, but are gainfully employed and do not commit crimes, and expressed the view that while such individuals may merit leniency, the Defendant, who had spent his time in the United States committing crimes, did not. Based on all of the foregoing, the Court determined that a sentence of 90 months' imprisonment—a term within the undisputed Guideline range—was appropriate.

*Appeal*

Following the sentencing, Defendant appealed to the Seventh Circuit. On appeal, Defendant claimed that the district court failed to address at sentencing his argument that his sentence should be reduced to account for his alleged lost opportunity to serve 19 months of his federal prison term concurrently with the unrelated state prison sentence. Defendant also argued that his 90-month sentence was unreasonable. On June 3, 2013, the Seventh Circuit rejected both of these arguments and affirmed Defendant's sentence. *United States v. Garcia-Segura*, 717 F.3d 566 (7th Cir. 2013). Defendant unsuccessfully petitioned the Seventh Circuit for rehearing. No.12-2522, Docket No. 35. Moreover, Defendant petitioned the Supreme Court for a Writ of Certiorari, which was denied on November 18, 2013. No. 12-2522, Docket No. 37-38.

Now proceeding *pro se*, on November 17, 2014, Defendant timely filed a motion for an order to vacate, set aside or reduce his sentence.

**LEGAL STANDARD**

Under 28 U.S.C. § 2255, "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." The relief sought in a Section 2255 motion "is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Thus, relief should be granted "only for an error of law that is jurisdictional, constitutional or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (internal quotations and citations omitted). Rule 4 of the *Rules*

*Governing Section 2255 Proceedings for the United States District Courts* provides that "[i]f it plainly appears from the motion, any attached exhibits, and the record of the prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party."

Section 2255 is not a substitute for a direct criminal appeal nor is it a means by which a defendant may appeal the same claims a second time. *See Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007) (Section 2255 motion is "neither a recapitulation of nor a substitute for a direct appeal.") (internal citations omitted). However, because claims of ineffective assistance of counsel often involve evidence outside of the trial record, such claims may be brought for the first time in a Section 2255 motion. *See Massaro v. United States*, 538 U.S. 500, 504 (2003); *United States v. Waltower*, 643 F.3d 572, 579 (7th Cir. 2011).

## DISCUSSION

### I.     Defendant's Section 2255 Motion

To prevail upon a claim of ineffective assistance of counsel, a defendant must prove that his attorney's performance fell below an objective standard of reasonableness and that the attorney's deficient performance prejudiced Defendant such that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Defendant must establish both of these prongs in order to succeed. *Gant v. United States*, 627 F.3d 677, 682 (7th Cir. 2010).

With regards to his counsel's performance, Defendant must demonstrate that his counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Court's analysis should begin with the "strong presumption" that the defendant's attorney rendered adequate

7

representation of his client. *United States v. Meyer*, 234 F.3d 319, 324-25 (7th Cir. 2000); *see also United States v. Ashimi*, 932 F.2d 643, 648 (7th Cir. 1991) (it is necessary to evaluate the conduct from counsel's perspective at the time, and indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance.") (internal citations and quotations omitted). "[B]ecause counsel is presumed effective, a party bears a heavy burden in making out a winning claim based on ineffective assistance of counsel." *United States v. Hall*, 212 F.3d 1016, 1021 (7th Cir. 2000) (quotation omitted).

With regards to the prejudice prong, Defendant must show a "reasonable probability" of a different result, meaning a "probability sufficient to undermine confidence in the outcome of the proceeding." *Strickland*, 466 U.S. at 694. In the context of sentencing issues, a showing that counsel's errors had 'some conceivable effect on the outcome of the proceeding is not sufficient to demonstrate prejudice." *United States v. Ruzzano*, 247 F.3d 688, 696-97 (7th Cir. 2001) (citation omitted). Although the Supreme Court has acknowledged that any amount of additional time in prison can constitute prejudice, a defendant must still show a reasonable probability that he received additional prison time because of counsel's error. *Id.* (*citing Glover v. United States*, 531 U.S. 198 (2001)).

Here, Defendant's motion fails because he cannot prove either the performance prong or the prejudice prong. Defendant's attorney did, in fact, raise a fast-track disparity argument at sentencing, but Defendant was clearly not eligible for the program. To be eligible for a lower sentence because of a perceived "fast-track disparity" in the Seventh Circuit, a defendant "must promptly plead guilty, agree to the factual basis proffered by the government, [and] execute an enforceable waiver of specific rights before or during the plea colloquy." *Id.* at 644. Unless a defendant satisfies each of these requirements, the sentencing court is free to reject a disparity

argument without comment. *Id.* at 644-45.

By waiting 18 months before he pled guilty and failing to waive his appellate or collateral rights, Defendant clearly failed to satisfy even the minimum, universal requirements of the fast-track program. Because Defendant was not eligible for the program, he cannot establish that his attorney's performance was deficient or that the Court would have imposed a lower sentence had his attorney made additional fast-track disparity arguments. Furthermore, and contrary to Defendant's claim in his Section 2255 motion, it was appropriate for the parties and for the Court to consider Defendant's criminal history in considering his eligibility for the fast-track program. *United States v. Garcia-Ugarte*, 688 F.3d 314, 317 (7th Cir. 2012) ("a defendant's criminal history would be an appropriate factor for the court to consider" with regard to defendant's eligibility for a fast-track program).

## II.     Certificate of Appealability

Unless this Court issues a certificate of appealability, an appeal may not be taken to the United States Court of Appeals from this Court's judgment in a Section 2255 proceeding. *See* 28 U.S.C. § 2253(c); *see also Buie v. McAdory*, 322 F.3d 980, 981 (7th Cir.2003). The decision of whether or not to grant a certificate of appealability is a screening device used to conserve judicial resources and prevent the Courts of Appeals from being overly burdened with unmeritorious Section 2255 petitions. *See Young v. United States*, 124 F.3d 794, 799 (7th Cir. 1997). Courts may only grant a certificate of appealability when the petitioner has presented "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Gonzalez v. Thaler*, 132 S.Ct. 641, 649 n.5 (2012). A substantial showing of the denial of a constitutional right requires the petitioner to show that reasonable jurists could find room to debate whether the petition should have been resolved in a different manner or that the issues

presented are adequate to entitle the petitioner to proceed further with his claims. *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).

Here, no reasonable jurist would find it debatable whether Defendant is entitled to relief under 28 U.S.C. § 2255 because Defendant's counsel did, in fact, raise a fast track disparity argument at sentencing. Even if Defendant's counsel had failed to make this argument, the result would still be the same because Defendant was clearly ineligible for the program. Accordingly, I decline to issue a certificate of appealability.

## CONCLUSION

Defendant's motion fails because nothing in the record establishes either that Defendant's counsel's performance fell below an objective standard of reasonableness or that his counsel's deficiency prejudiced him in any way. Defendant's motion is denied and Defendant is not entitled to a certificate of appealability.

ENTER:

James B. Zagel
United States District Judge

DATE: July 29, 2015